J. B. SIMPSON, INC., *v.* O'HARA.

1. SALES—PASSAGE OF TITLE—INTENT.
    Question of when title to personal property passes is one of intention to be ascertained from terms of the contract and from circumstances of the case (2 Comp. Laws 1929, § 9458, rule 4).

2. COMMERCE—SALES—TAXATION—CLOTHING.
    Transaction comprising order for men's clothing, taken in Michigan and sent to Illinois for acceptance, filling and delivery to carrier at which time title passed to buyer *held*, Illinois rather than Michigan sale and, since it is interstate commerce, it is not subject to Michigan sales tax, notwithstanding minor alterations were thereafter made at seller's expense in Michigan (2 Comp. Laws 1929, § 9458, rule 4; Act No. 167, Pub. Acts 1933).

3. SAME — INTERSTATE COMMERCE—DISCRIMINATION— CONSIGNMENT TO SHIPPER.
    Negotiation of sales of goods which are in other States for purpose of introducing them into State where negotiation is made, is interstate commerce and cannot be interfered with, regulated or taxed therein, though there be no discrimination between such business and domestic commerce and though goods be shipped therein on consignment to shipper, or agent to whom order is given, for delivery by agent on payment of purchase price.

4. CONSTITUTIONAL LAW—TAXATION—INTERSTATE COMMERCE.
    A State statute may not impose a tax upon interstate commerce even though inability to do so may result in a discriminatory handicap upon the local merchants of the State.

5. TAXATION—CONSTRUCTION OF STATUTES.
    Tax exactions, property or excise, must rest upon legislative enactment and collectors can act only within express authority conferred thereby, the scope of such laws cannot be extended by implication or forced construction and language, if dubious, is not resolved against the taxpayer.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted June 10, 1936. (Docket No. 86, Calendar No. 38,895.) Decided September 2, 1936.

Assumpsit by J. B. Simpson, Inc., an Illinois corporation, against John J. O'Hara, Auditor General, and others comprising the State Board of Tax Administration, to recover sales taxes paid under protest. Judgment for plaintiff. Defendants appeal. Affirmed.

*Butzel, Levin & Winston* (*Chris M. Youngjohn,* of counsel), for plaintiff.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd* and *Arthur T. Iverson,* Assistants Attorney General, for defendants.

BUSHNELL, J. This appeal involves the interpretation by the State Board of Tax Administration of the provisions of the general sales tax act (Act No. 167, Pub. Acts 1933) as applied to the solicitation of orders in State of Michigan by plaintiff, an Illinois corporation.

Plaintiff manufactures men's clothing at Chicago, where its principal office and plant is located. It is admitted to do a men's tailoring business in this State and maintains a branch office in Detroit where samples of cloth and clothing are displayed and the orders taken by its salesmen are accumulated and forwarded to the home office. Suits are only made in Chicago upon individual orders and according to the customers' measurements and then only after the signed order is accepted. Upon its completion the garment may be sent direct to the customer, or

with others to Detroit for delivery from the company's branch office.

All orders are in writing and contain the following conditions:

"This order is subject to acceptance at our main office at Chicago, Illinois, and is not subject to countermand after such acceptance. Merchandise will be shipped from Chicago, Illinois, and *title shall pass to purchaser immediately upon delivery to the carrier.*"

It is specified that the balance of the purchase price is to be paid upon delivery.

All merchandise is shipped in a fully completed condition except that minor alterations are made at the seller's expense, either by a tailor of the customer's selection or by bushelmen employed by it at the Detroit office. Funds received by the Detroit office are deposited locally but are only subject to checks drawn at Chicago. Credit is not extended to customers.

After adoption of the retail sales tax in this State the question arose as to whether the foregoing transactions constituted interstate or intrastate commerce. The State board of tax administration, evidently preferring a judicial determination of the matter, resolved the doubt in favor of the State. Plaintiff paid the computed sales tax under protest and brought this action for its recovery.

The trial court, applying the following authorities, held that the sales made by plaintiff were not subject to local taxation and entered judgment in the agreed sum of $9,113.13: *Welton* v. *Missouri,* 91 U. S. 275; *Caldwell* v. *North Carolina,* 187 U. S. 622 (23 Sup. Ct. 229); *Stewart* v. *Michigan,* 232 U. S. 665 (34 Sup. Ct. 476); *Sonneborn Bros.* v. *Cureton, Attorney*

*General of Texas,* 262 U. S. 506 (43 Sup. Ct. 643), and uniform sales act, section 19, rule 4, being 2 Comp. Laws 1929, § 9458.

The general sales tax act contains its own definition of a sale at retail. See *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282, 284. The essential words of the definition, so far as the instant case is concerned, are

"Any transaction by which is transferred for consideration the ownership of tangible personal property." (Act No. 167, § 1, subd. [b.1] Pub. Acts 1933).

Where and when is the ownership of clothing ordered from plaintiff transferred to its customers?

The uniform sales act provides:

"Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

"(2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee, whether named by the buyer or not, for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section 20. (The exceptions are where the seller is required to pay transportation on the goods and where there is a reservation of possession on property when goods are shipped.) This presumption is applicable, although by the terms of the contract, the buyer is

to pay the price before receiving delivery of the goods, and the goods are marked by the words 'collect on delivery' or their equivalents.''

''The authorities, as well as the provisions of the uniform sales act, are to the effect that the question of when title to property passes is one of intention to be ascertained from the terms of the contract and from the circumstances of the case.'' *Cadillac Machine Co.* v. *Mitchell-Diggins Iron Co.,* 205 Mich. 107, 120.

The orders are taken in Michigan and forwarded to Illinois for acceptance. If accepted they are filled with the understanding that title passes to the purchaser immediately upon delivery of the goods to the carrier. The sale is not completed until the order is accepted and if not accepted there is no sale.

Both by the language of the statute and the terms of the order, the parties contemplate that the title to the clothing passes in the State of Illinois when delivery is made to the carrier at Chicago. Such a sale is not made in Michigan but in Illinois and being interstate commerce cannot be taxed by the State of Michigan.

The authorities supporting this conclusion are numerous and practically uniform. In addition to those heretofore cited, we give the following without quoting therefrom: *People* v. *Bunker,* 128 Mich. 160; *People* v. *C. Kern Brewing Co.,* 166 Mich. 292 (44 L. R. A. [N. S.] 447, Ann. Cas. 1912 D, 981); *Norfolk & W. R. Co.* v. *Pennsylvania,* 136 U. S. 114 (10 Sup. Ct. 958); *Brennan* v. *Titusville,* 153 U. S. 289 (14 Sup. Ct. 829); *American Express Co.* v. *Iowa,* 196 U. S. 133 (25 Sup. Ct. 182); *Rearick* v. *Pennsylvania,* 203 U. S. 507 (27 Sup. Ct. 159); *Crenshaw* v. *Arkansas,* 227 U. S. 389 (33 Sup. Ct. 294); *Cheney*

*Bros. Co.* v. *Massachusetts,* 246 U. S. 147 (38 Sup. Ct. 295); *Real Silk Hosiery Mills* v. *City of Portland,* 268 U. S. 325 (45 Sup. Ct. 525).

The general rule found in the foregoing authorities is well stated in 5 R. C. L. pp. 768, 769 and 770:

"The negotiation of sales of goods which are in other States, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce, and cannot be interfered with, regulated, or taxed by the State in which the negotiation was made, though there be no discrimination between such business and domestic commerce, and this rule applies to persons who engage in the business of soliciting orders by sample or otherwise for goods to be shipped from another State, such as agents of nonresident manufacturers or dealers, drummers or canvassers. * * *

"It makes no difference with reference to the interstate character of a sale, made on a contract for the purchase of goods, which are to be shipped from another State, that the goods are to be consigned to the shipper or the agent to whom the order is given, and to be delivered by the agent on payment of the purchase price."

That some alterations are made in Michigan upon the finished garments does not change the rule. Where a part of a contract for the sale of furniture included installation, which consisted of uncrating the furniture, putting it in rooms, attaching mirrors, assembling beds, dusting and polishing and removing marks and soils, this court said all these things were "dissociated from any attempt to connect them with or make them a part in the State of property which had not and could not have been the subject of interstate commerce." *Browning* v. *City of Waycross,* 233 U. S. 16 (34 Sup. Ct. 578).

They were incidents of delivery, which is a part of interstate commerce. *Rath Packing Co.* v. *General Cold Storage Co.,* 222 Mich. 315; *Caldwell* v. *North Carolina,* 187 U. S. 622 (23 Sup. Ct. 229); *Vulcan Steam Shovel Co.* v. *Flanders,* 205 Fed. 102; *Puffer Manfg. Co.* v. *Kelly,* 198 Ala. 131 (73 South. 403); *Smilansky* v. *Mandell Bros.,* 254 Mich. 575.

The argument that failure to tax such transactions imposes a discriminatory handicap upon the local merchants of the State has long since been answered and disposed of in *Robbins* v. *Shelby Taxing District,* 120 U. S. 489 (7 Sup. Ct. 592).

It is suggested that since tax measures are presumed to be constitutional and valid that any reasonable doubt should be resolved in favor of the taxing power of the State. If there were any doubt nevertheless "tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, *and the language thereof, if dubious, is not resolved against the taxpayer.*" *In re Dodge Bros.,* 241 Mich. 665, 669.

The judgment is affirmed, with costs.

North, C. J., and Fead, Wiest, and Sharpe, JJ., concurred. Butzel, Potter, and Toy, JJ., did not sit.