### J. B. SIMPSON, INC., v. STATE BOARD OF TAX ADMINISTRATION.

1. STATUTES—DEFINITIONS.

A definition of words and phrases in an act carries no force un-·less employed in the enactment.

2. TAXATION—USE TAX—INTERSTATE COMMERCE.

Statute imposing a tax upon sellers of "tangible personal property for storage, use or other consumption in this State, engaged in the business of selling at retail in this State," would not be applicable to merchant tailoring establishment located in Illinois which takes orders for clothes in this State from residents hereof and then fills the orders and passes title to the clothing to the purchaser upon delivery in Illinois to an interstate carrier, since it is engaged in interstate commerce and is not required to register under the sales tax act (Act No. 167, Pub. Acts 1933, as amended; Act No. 94, Pub. Acts 1937).

3. SAME—COLLECTION OF USE TAX FROM CONSUMERS.

The remedy of the State as to goods purchased in interstate commerce under the use tax act, if any, is against the consumers (Act No. 94, Pub. Acts 1937).

4. SAME—INTERSTATE COMMERCE—JURISDICTION—STATES.

Neither the legislature nor administrative officials may reach into another State and mandate persons there to serve as tax collectors in behalf of this State upon merchandise there manufactured, sold, and delivered in interstate commerce destined for storage, use or other consumption in this State.

5. CONSTITUTIONAL LAW—STATUTES—PARTIES.

Matter of constitutionality of statute imposing a tax is left without decision where party attacking the statute is not subject to tax imposed thereby.

6. COSTS—PUBLIC QUESTION—APPLICATION OF USE TAX ACT.

No costs are allowed in suit involving application of use tax act, a public question being involved (Act No. 94, Pub. Acts 1937).

7. Constitutional Law—Burdens on Interstate Commerce—States.

A State may not impose a burden on interstate commerce not in any manner connected with intrastate commerce.

8. Taxation—Sales Tax—Use Tax.

A foreign corporation doing business within this State subject to the sales tax is liable for the use tax upon goods shipped into the State to residents as, in such case, the use tax is complementary as associated with the sales tax and not considered a burden upon what would otherwise be interstate commerce (Act No. 167, Pub. Acts 1933, as amended; Act No. 94, Pub. Acts 1937).

9. Judgment—Res Judicata—Interstate Commerce—Taxation.

Business of merchant tailoring establishment wherein orders are taken in this State from residents herein for clothing manufactured and delivered in Illinois to an interstate carrier having been previously determined to be interstate commerce and not subject to sales tax, such matter is *res judicata* in suit involving determination of application of use tax (Act No. 167, Pub. Acts 1933, as amended; Act No. 94, Pub. Acts 1937).

Bushnell, Boyles, and North, JJ., dissenting.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 23, 1940. (Docket No. 4, Calendar No. 41,123.) Decided May 21, 1941. Certiorari denied by Supreme Court of the United States October 27, 1941.

Bill by J. B. Simpson, Inc., an Illinois corporation, against State Board of Tax Administration and others for a declaratory judgment regarding the rights of plaintiff under the use tax act and for injunctive relief. Decree declaring plaintiff not required to collect and pay the tax, and granting injunction. Defendants appeal. Modified and affirmed.

*Butzel, Levin & Winston,* for plaintiff.

*Thomas Read,* Attorney General, *Edmund E. Shepherd, Gaylord N. Bebout,* and *T. Carl Holbrook,* Assistants Attorney General, for defendants.

Wiest, J.   The bill herein was filed under the provisions of Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 *et seq.* [Stat. Ann. § 27.501 *et seq.*]), to obtain a decree declaratory of the rights of plaintiff under Act No. 94, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3663–41 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 7.555 [1] *et seq.*), commonly known as the "use tax act." It is agreed that the facts are fully stated in *J. B. Simpson, Inc., v. O'Hara,* 277 Mich. 55, where we held plaintiff's sales in Chicago did not come within Act No. 167, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 3663–1 *et seq.*, Stat. Ann. § 7.521 *et seq.*), known as the "sales tax act."

Briefly stated, plaintiff operates a merchant tailoring establishment in Chicago, Illinois, takes orders in this State, from residents, for clothes, fills such orders in Chicago and, upon delivery there to an interstate carrier, title thereto is vested, by agreement, in the purchaser. The circuit court held the sales and delivery so made did not require plaintiff to collect and pay the tax under the use tax act. Defendants appeal.

The use tax act in section 2, subd. (d), states:

" 'Seller' means the person from whom a purchase is made and includes every person engaged in this State or elsewhere in the business of selling tangible personal property for storage, use, or other consumption in this State."

Section 5 of the act provides:

"Every seller of tangible personal property for storage, use or other consumption in this State, engaged in the business of selling at retail in this State, shall, within thirty days after the effective date of this act, register with the board and give the name and address of each agent operating in this State, the location of any and all distribution

or sales houses or offices, or other places of business in this State and such other information as the board may require with respect to matters pertinent to the enforcement of this act: *Provided,* That it shall not be necessary for a seller, holding a license obtained pursuant to the provisions of act number one hundred sixty-seven of the public acts of nineteen hundred thirty-three, as amended, to register with the board as provided in this act. Every such seller shall collect the tax imposed by this act from the consumer and the board may, by rule or regulation, authorize any other seller to collect such tax from the consumer, and such rule or regulation shall require that each such seller shall register with the board in such form as may be therein provided.''

A definition of words and phrases in an act carries no force unless employed in the enactment and cannot be considered in the present instance for the quoted enactment, by its specific terms, only applies to sellers of ''tangible personal property for storage, use or other consumption in this State, engaged in the business of selling at retail in this State,'' and this is manifested by the required registration of such persons under the act, unless registered under the sales tax act.

Plaintiff did not so register.

In the former case, *J. B. Simpson, Inc.,* v. *O'Hara, supra,* we held, in effect, that plaintiff was not required to register under the sales tax act for sales made by it were not made in Michigan but in Illinois and, being interstate commerce, cannot be taxed by the State of Michigan.

Plaintiff's sales in Chicago are not subject to the use tax any more than to the sales tax, and it was not required to register. The remedy of the State under the use tax act, if any, is against the consumers.

Section 7 of the act provides:

"Each consumer storing, using or otherwise consuming in this State tangible personal property purchased for such purpose or purposes shall be liable for the tax imposed by this act, and such liability shall not be extinguished until the tax has been paid to the board. The payment to the board of the tax, interest and any penalty assessed by the board shall relieve the seller, who sold the property with regard to the storing, use or other consumption on which the tax was paid from the payment of the amount of the tax which he may be required under this act to collect from the purchaser."

Sanction of the claim made by the State would make plaintiff a collector of a tax, in behalf of the State, upon merchandise, manufactured, sold and, in the course of interstate commerce, delivered in Chicago for carriage to owners thereof in the State of Michigan, and such cannot be done, for the law-making arm of the legislature, and much less that of mere administrative officials, cannot reach into another State and mandate persons there to so serve. The use tax act does not accomplish any such thing.

Considering our holding in the sales tax case in connection with this opinion the decree in the circuit court, restraining defendants from exacting the asserted use tax from plaintiff, is affirmed.

We find no occasion to touch upon the constitutionality of the act and, as there was none necessary in the circuit court, the part of the decree below holding the act constitutional is eliminated and the question left without decision to await a proper setting.

The tax paid by plaintiff and impounded by order of the circuit court will be released to plaintiff as owner thereof.

A public question being involved, no costs are awarded.

After the above was written and submitted to the justices for consideration, the supreme court of the United States, on February 17th, handed down opinions in *Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359 (61 Sup. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475), and *Nelson* v. *Montgomery Ward & Co.*, 312 U. S. 373 (61 Sup. Ct. 593, 85 L. Ed. 897), reversing the holding of the supreme court of Iowa that the use tax of that State was in violation of the Federal Constitution as applied to mail order business conducted between customers in Iowa and the mail order houses of defendants located outside of Iowa. In those cases defendants were authorized to do business in the State of Iowa and maintained retail stores therein with sales subject to the State sales tax, and it was held, as the use tax was complementary to the sales tax, to which defendants had subjected themselves, that all sales made by defendants in Iowa, whether out of stock on hand in Iowa or out of stock elsewhere and coming to rest in the State of Iowa, brought the sales under order and shipment within the use tax. Such is not the case at bar.

Here the plaintiff made no sales in this State subject to the sales tax. *J. B. Simpson, Inc.*, v. *O'Hara, supra.* See, also, *Montgomery Ward & Co.* v. *Fry*, 277 Mich. 260. Merchandise was purchased by residents of Michigan from plaintiff in Illinois, with title passed in that state to the purchaser under express contract consummated in the State of Illinois. Plaintiff did not maintain retail stores nor sell merchandise at retail in this State, and such fact brings the case within the following exception noted in *Nelson* v. *Sears, Roebuck & Co., supra:*

"Respondent, however, insists that the duty of tax collection placed on it constitutes a regulation

of and substantial burden upon interstate commerce and results in an impairment of the free flow of such commerce. It points to the fact that in its mail order business it is in competition with out-of-State mail order houses which need not and do not collect the tax on their Iowa sales. But those other concerns are not doing business in the State as foreign corporations. Hence, unlike respondent, they are not receiving benefits from Iowa for which it has the power to exact a price.''

Along this line see *Montgomery Ward & Co.* v. *Fry, supra.*

In the case at bar the State seeks to impose a burden on interstate commerce not in any manner connected with intrastate commerce, and this may not be done. Plaintiff needed no authorization to do business in the course of interstate commerce in this State, and leave to do business in this State, unless an intrastate business is carried on and the intrastate and interstate businesses become associated, does not subject interstate commerce to any State-imposed burden.

Under the mentioned Federal decisions, a foreign corporation doing business within this State, subject to the sales tax, is liable for the use tax upon goods shipped into the State to residents as, in such case, the use tax is complementary as associated with the sales tax and not considered a burden upon what would otherwise be interstate commerce. The business here involved, upon which the State seeks to sustain the use tax, is the very business which we held, in *J. B. Simpson, Inc.,* v. *O'Hara, supra,* was not subject to the sales tax, and upon that point that decision is *res judicata.* So disassociated, the business is strictly interstate commerce upon which the State may not impose the burden of the use tax or compel plaintiff to collect the same.

Sharpe, C. J., and Chandler, and McAllister, JJ., concurred with Wiest, J.

Boyles, J. (*dissenting*). Plaintiff brings this action under Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 *et seq.* [Stat. Ann. § 27.501 *et seq.*]), for a declaration of the rights of plaintiff under Act No. 94, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3663–41 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 7.555 [1] *et seq.*), known as the use tax act.

Plaintiff (1) challenges the constitutionality of said act; and (2) claims that if the act is upheld, it does not apply to plaintiff's method of doing business in Michigan. The court below held that the tax imposed by the act is a valid and constitutional exercise of the taxing power of the State, but that it did not impose any duty or tax upon the plaintiff. Defendant State board of tax administration appeals from that part of the decree holding that the use tax act does not impose any duty or tax upon the plaintiff. Plaintiff cross-appeals from that part of the decree holding the act to be constitutional.

This case is companion to *Banner Laundering Co. v. State Board of Tax Administration, post,* 419, decided herewith, wherein the constitutionality of the use tax act is decided and upheld. It remains for us to consider whether the act applies to plaintiff's operations in this State.

Plaintiff was before this court in *J. B. Simpson, Inc., v. O'Hara,* 277 Mich. 55. In that case, plaintiff challenged the constitutionality of an interpretation of the sales tax act, Act No. 167, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 3663–1 *et seq.,* Stat. Ann. § 7.521 *et seq.*), as applied to the operations of plaintiff in the State of Michigan. It was there held that, inasmuch as plaintiff's sales of property

to customers in Michigan were made in Illinois and shipped in interstate commerce, the Michigan sales tax act did not apply to plaintiff's business. There has been no change in the circumstances or business methods of plaintiff since our decision in *J. B. Simpson, Inc.,* v. *O'Hara, supra,* and the facts in the case at bar are the same. Plaintiff is an Illinois corporation selling men's tailoring apparel in Michigan, maintains a branch office in Detroit where samples are kept and sometimes displayed, operations of salesmen are supervised, an office staff maintained, bushelmen are employed to make alterations, collections of unpaid balances are made and deposited in a Detroit bank subject only to withdrawals by Illinois checks. At plaintiff's branch office in Detroit samples of cloth and sample suits are exhibited, salesmen take measurements and orders and accept down-payments. Plaintiff there has a telephone listing and address as "SIMPSON J B INC tlrs" and an advertisement under the same name in the telephone book. Orders for goods are solicited in Michigan, received by the Detroit branch, and forwarded to Chicago, subject to acceptance in Illinois. The goods are manufactured in Illinois, and title passes to the purchaser upon delivery to the carrier in Illinois. No credit is extended, balance of the purchase price is collected from customers upon delivery. Plaintiff has been authorized to do a tailoring business in Michigan as a foreign corporation, and is paying its fees as a foreign corporation for the privilege of engaging in business in Michigan.

Section 3 of the use tax act provides:

"There is hereby levied upon and there shall be collected from every person in this State a specific tax for the privilege of using, storing or consuming tangible personal property in this State after June

thirty, nineteen hundred thirty-seven, which tax shall be equal to three per cent. of the price of such property. For the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that tangible personal property purchased on or after June thirty, nineteen hundred thirty-seven by any person for delivery in this State is purchased for storage, use or other consumption in this State.''

Section 2, subd. (b), of the act defines "use":

'' 'Use' means the exercise of any right or power over tangible personal property incident to the ownership of that property or by any transaction where possession is given.''

Section 2, subd. (c), defines "storage":

'' 'Storage' means any keeping or retention in this State for any purpose after losing its interstate character.''

Section 2, subd. (d), defines "seller":

'' 'Seller' means the person from whom a purchase is made and includes every person engaged *in this State or elsewhere* in the business of selling tangible personal property for storage, use, or other consumption in this State; and when, in the opinion of the board, it is necessary for the efficient administration of this act to regard any salesman, representative, peddler or canvasser as the agent of a dealer, distributor, supervisor, or employer under whom he operates or from whom he obtains tangible personal property, sold by him for storage, use or other consumption in this State, irrespective of whether or not he is making such sales on his own behalf, or on behalf of such dealer, distributor, supervisor, or employer, the board may so regard him and may regard such dealer, distributor, supervisor, or employer as the 'seller' for the purpose of this act.''

It is quite apparent from the foregoing that the language of sections 2 and 3 of the act applies to the use, storage or consumption of tangible personal property sold by a nonresident after it comes to rest in this State.

Section 5 of the act requires every seller of tangible personal property for storage, use or other consumption in this State "engaged in the business of selling at retail in this State" to register with the State board of tax administration (unless licensed under the sales tax act); and further requires every such seller to collect the tax imposed by the act. Section 9 makes every seller who is required to collect the tax personally liable for the same. Plaintiff insists that sections 5 and 9 should not be construed to apply to it, relying upon *J. B. Simpson, Inc., v. O'Hara, supra.* We do not agree that such is the result of the holding in that case. From the mere fact that plaintiff's orders are accepted and title passes in Illinois, and the goods shipped into Michigan in interstate commerce, it does not necessarily follow that plaintiff is not liable for the use tax after the property comes to rest in this State. Reading the use tax act in its entirety, sections 2 and 3 obviously apply to plaintiff, and section 5 should not be construed to exclude plaintiff from such obvious requirements. Even if section 5 be eliminated from application to plaintiff in this case under the severing clause of the act (section 22), we are constrained to hold that other sections of the act would still require plaintiff to pay the tax. Section 5, read in conjunction with other parts of the act, applies to plaintiff.

It must be conceded that the goods sold by plaintiff are imported into Michigan in interstate commerce. However, when such goods have become part of the common mass of property in this State,

Michigan may subject them to a property tax or to a tax upon their use. This is not a tax upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. Such property may be subjected when once it is at rest in this State to a nondiscriminatory tax upon use or enjoyment. *Henneford* v. *Silas Mason Co.,* 300 U. S. 577 (57 Sup. Ct. 524, 81 L. Ed. 814).

In *Felt & Tarrant Manfg. Co.* v. *Gallagher,* 306 U. S. 62 (59 Sup. Ct. 376, 83 L. Ed. 488), an Illinois corporation, while not qualified to do local business in California, had offices in that State, solicited orders from California purchasers through agents who took orders subject to the vendor's approval in Illinois, the goods were sent by the vendor from Illinois directly to the purchasers or to agents for distribution in California, and the purchase price was paid directly to the vendor in Illinois. It was there held that the State of California might constitutionally apply to such nonresident corporation the provisions of its use tax act requiring retailers maintaining a place of business in California and making sales of tangible personal property for storage, use, or other consumption therein to collect from the purchasers the taxes imposed. The act so applied was held to be consistent with both the commerce clause and the due process clause of the fourteenth amendment. The California act is practically the same as the Michigan act, and this case controls the case at bar.

The United States supreme court has otherwise held that there is an interval after such articles have reached the end of their interstate movement and before their consumption in interstate operations has begun when the ''use and storage'' are subject to local taxation. *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167 (59 Sup. Ct. 389, 83 L. Ed.

586).   In the more recent case of *Nelson* v. *Sears, Roebuck & Co.,* 312 U. S. 359 (61 Sup. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475, decided February 17, 1941), the question arose solely over interstate mail order sales.   The defendant in Illinois forwarded catalogues to persons in Iowa, from which the purchasers selected goods and forwarded the written orders to defendant's place of business outside Iowa, the orders being accompanied by payment of the purchase price plus transportation charges.   The orders were accepted only at the place received and if accepted were filled by delivery to a carrier in interstate commerce for shipment from the out-of-State place of business to the purchasers in Iowa. The case involved an Iowa use tax act the same in essential respects as the act in this State.   The Iowa act contained a provision that, in case of noncompliance by a foreign corporation, the seller's permit to do business in Iowa might be revoked.   A Michigan statute contains a similar provision.   See general corporation act (Act No. 327, § 94, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 10135-94, Stat. Ann. § 21.95]).   The defendant maintained retail stores in Iowa and on sales made at those stores paid the Iowa sales tax.   The defendant, however, refused to collect the tax on mail orders sent to Iowa purchasers.   The Iowa Supreme Court held the tax invalid.   On certiorari, the United States Supreme Court, citing *Henneford* v. *Silas Mason Co., supra,* and *Southern Pacific Co.* v. *Gallagher, supra,* upheld the validity of such tax as applied to plaintiff's interstate business.   The issue was stated by the court as follows:

"The nub of the present controversy centers on the use of respondent as the collection agent for Iowa."

The court said:

"The fact that respondent could not be reached for the tax if it were not qualified to do business in Iowa would merely be a result of the 'impotence of State power.'   *   *   *

"Nor is the mode of enforcing the tax on the privileges of these Iowa transactions any discrimination against interstate commerce. As we have seen, the use tax and the sales tax are complementary. Sales made wholly within Iowa carry the same burden as these mail order sales. A tax or other burden obviously does not discriminate against interstate commerce where 'equality is its theme.' *Henneford* v. *Silas Mason Co., supra,* pp. 583–586; *McGoldrick* v. *Berwind-White Coal Mining Co.* (309 U. S. 33, 48, 49 [60 Sup. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876]).

"Respondent, however, insists that the duty of tax collection placed on it constitutes a regulation of and substantial burden upon interstate commerce and results in an impairment of the free flow of such commerce. It points to the fact that in its mail order business it is in competition with out-of-State mail order houses which need not and do not collect the tax on their Iowa sales. But those other concerns are not doing business in the State as foreign corporations. Hence, unlike respondent, they are not receiving benefits from Iowa for which it has the power to exact a price."

In a companion case, *Nelson* v. *Montgomery Ward & Co.,* 312 U. S. 373 (61 Sup. Ct. 593, 85 L. Ed. 897), decided at the same time, the court further said:

"Distribution of catalogues in Iowa apparently involves no act of respondent or its agents within the State. There was testimony that no employee of the mail order houses lives in Iowa; that there are no acts of respondent in Iowa in regard to any of the orders sent to the out-of-State mail order houses; and that respondent has no machinery for

collecting sums due from Iowa customers by individuals within the State, it not being the practice of respondent to refer its delinquent mail order accounts to its retail stores in Iowa for collection. Those facts are immaterial. Some of respondent's employees are in Iowa representing it in the course of business which it is conducting pursuant to its permit to do business in that State. The fact that other of its employees who work in the mail order houses and handle the mail orders here involved are not in Iowa is wholly irrelevant. It does not permit respondent to escape the burden which Iowa has exacted as a price of enjoying the full benefits flowing from its aggregate Iowa business.''

See, also, *McGoldrick* v. *Berwind-White Coal Mining Co., supra; Felt & Tarrant Manfg. Co.* v. *Gallagher, supra.*

In the Iowa cases, the method of enforcing the collection of the use tax from the defendants was by revoking the license to do business in Iowa in the event of failure of payment. Michigan statutes contain the same provision. Moreover, difficulty of collection of a specific tax is not ground for holding it unconstitutional. Collection of the tax is an administrative function. In that connection, we may note that plaintiff is authorized to do business in Michigan as a foreign corporation, can sue and be sued in a State court, and has an account in a Michigan bank.

We conclude that the imposition upon plaintiff of the duty of collecting the use tax is within the express language of the act and not an unconstitutional burden. The purpose of the use tax is to complement the sales tax. Obviously the use tax must be applied to goods purchased outside the State because if limited to goods purchased within the State, it is nullified, and such a tax is already

imposed by the sales tax act. The use tax is designed to compensate the State for loss of revenue under the sales tax act, to remove inequalities from the Michigan local tax system, and to eliminate unfair disadvantages under which local retailers otherwise must labor. Its purpose is to avoid the loopholes in the sales tax act arising from immunity of interstate commerce from the State sales tax. The use tax should be construed in accordance with this purpose. The weight of authority is well stated in 23 Am. Jur. § 105, p. 111, as follows:

"It has been ruled that foreign corporations doing business in the State may properly be subjected to the requirements of various statutes making corporations agents for the collection of valid State taxes. Thus, a general State statute requiring distributors or retailers maintaining a place of business in the State to act as agent of the State in collecting from their customers a valid excise tax imposed on the use by the latter of the products sold by the corporation after they have come to rest within the State may properly be applied to a foreign corporation falling within its terms, and such corporation may be required to perform the statutory duty with respect to such products shipped in from other States. This involves no unconstitutional burden on commerce or upon the corporation, even as applied to products shipped directly to the customer from other States and to a foreign corporation making no intrastate sales of such products, but doing business exclusively through the solicitation of orders therefor, subject to approval at its home office, followed by an interstate shipment into the State. Foreign corporations exercising the privilege of carrying on business in the State, without any contract limiting the State's power of regulation, may properly be required to comply with statutes making corporations or their

officers the agents of the State for the collection of valid taxes due on the incomes of employees of such corporations and on obligations of the corporations held by residents of the State.''

Pending decision herein, the tax has been paid by plaintiff and impounded by order of the circuit court. It must be paid over to the State board of tax administration, and the injunction restraining enforcement of the act dissolved.

A decree should be entered in accordance with this opinion. A public question being involved, no costs are awarded.

Bushnell and North, JJ., concurred with Boyles, J. Butzel, J., did not sit.